CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 2 6 2015

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

HAKIM LUQMAAN, )
)
    Plaintiff, ) Civil Action No. 7:14-CV-00115
)
v. ) **MEMORANDUM OPINION**
)
VOLVO GROUP NORTH AMERICA, LLC, et al.,) By: Hon. Glen E. Conrad
) Chief United States District Judge
    Defendants. )

Plaintiff Hakim Luqmaan filed this employment discrimination action against Defendants Volvo Group North America, LLC and Volvo Trucks North America, Inc. (collectively, "Volvo"), alleging that Volvo demoted him because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. The case is presently before the court on Volvo's motion for summary judgment. For the following reasons, the court will grant that motion.

## Factual and Procedural History

The following facts are either undisputed, or, where disputed, are presented in the light most favorable to Luqmaan. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Luqmaan, an African-American man, was hired by Mack Trucks in 1987. He held a variety of positions in that company over the next several years. Luqmaan Dep. at 47-51, Def.'s Mot. Summ. J. Ex. A, Docket No. 29-1. In or around 2003, Luqmaan transferred to Volvo's New River Valley ("NRV") facility in Dublin, Virginia, following the merger between Mack Trucks and Volvo. Id. At NRV, Luqmaan initially worked as a Quality Assurance Advisor, a position that was eventually retitled Senior Quality Engineer. Id.

At NRV, the Customer Option Center ("COC"), also known as the New Vehicle Option Center, provides customers with the ability to customize their truck orders with options that are not part of the normal production process. Id. at 62. The COC "has existed [at NRV] in a variety of

forms." Sutphin Decl. ¶ 2, Def.'s Mot. Summ. J. Ex. 2, Docket No. 29-2. Initially, the COC processed option orders, while actual physical modification of the trucks was outsourced to Fontaine Modification Company ("Fontaine"), a company that is unaffiliated with Volvo but is located "literally right up the road from NRV." Id. Luqmaan first worked in the COC as a Senior Quality Engineer during this time period. Luqmaan Dep. at 53-54, 59-60, 215-16. His duties included quoting options for customers, keeping track of option orders in a database, ordering parts for option orders, creating financial reports, coordinating billing, and maintaining a cache of options order materials. Id. at 65-66. Volvo eventually dismantled this version of the COC. Id. At that time, Luqmaan bid for and obtained a position as a Senior Quality Engineer in the Quality Department at NRV. Id. at 67-68.

Volvo later introduced a "more formalized" version of the COC, which it modeled after the way Mack Trucks handled options at its facility in Macungie, Pennsylvania. Sutphin Decl. ¶ 2. Under this model, NRV employees performed the options work in-house, rather than outsourcing it to Fontaine. Luqmaan Dep. at 78-81. Luqmaan applied to work in the new COC in early 2011. Id. at 74-75. He was interviewed by Vic Sherbrick, a Volvo employee based out of Macungie. Id. at 75. Sherbrick hired Luqmaan as Manager of the COC in February 2011. Id. at 82-83. Thereafter, Luqmaan interviewed and hired Production Supervisor Scott Hetherington, his only direct report, who was responsible for the "day-to-day running of the business." Id. at 95-96. Luqmaan also interviewed candidates for a Business Analyst position; however, no one was hired to fill this role due to a hiring freeze implemented by Volvo. Id. at 89-90, 93-94. As COC Manager, Luqmaan's responsibilities included quoting prices to customers, keeping track of options orders in a database, preparing financial reports, and expanding the COC's business. Id. at 98-99. By 2012, the COC was formally incorporated into the NRV's organizational structure under the Customer Engineering Department. Id. at 107-108. Luqmaan reported to Steve Worrell, CE Group Manager, who in turn

2

reported to Ivan Mitchell, the Director of Customer Engineering. Id. at 115-16.

The new COC faced challenges in its day-to-day business, including being short-staffed and struggling to be recognized and respected within the NRV hierarchy, which Luqmaan attributed to tension between the Mack Trucks and Volvo sides of the business. Id. at 105-106. These challenges resulted in manpower issues: Luqmaan had to "beg[] and borrow[] to get whatever help [he] could to get the trucks built" in the COC. Id. at 260. Even so, the COC still had to turn down some options work. Id. at 142; Sutphin Decl. ¶ 3. Nonetheless, the COC was profitable under Luqmaan's direction. Sutphin Dep. at 42, Pl.'s Br. in Opp. Ex. 11, Docket No. 35-11; LaFon Dep. at 10-11, Pl.'s Br. in Opp. Ex. 13, Docket No. 35-13. As COC Manager, Luqmaan worked twelve to thirteen hour days, as well as some weekends, without earning overtime. Luqmaan Dep. at 125.

NRV is a unionized facility whose bargaining unit employees are represented by the United Auto Workers ("UAW"). Luqmaan Dep. at 135. Luqmaan is not represented by the union. Id. During his time as COC Manager, the UAW filed two grievances against Volvo, arguing that Luqmaan was performing work that should have been performed by bargaining unit employees. Id. The UAW was also worried that the COC was not growing as quickly as it should. Id. at 138-39. On January 11, 2013, the UAW expressed these "deep concerns" in a letter addressed to Lars Blomberg, then NRV's Vice President and General Manager. Id. Ex. 7; Sutphin Decl. ¶ 4. In this letter, the UAW commended Luqmaan, who in their view had "done a marvelous job with what resources he has been given." Luqmaan Dep. Ex. 7 at 1. The UAW also stated that they had "nothing but praise for what [Luqmaan] has done trying to make the COC become a relevant part of [NRV] business." Id. They went on to say, however, that the "engineering group is not the appropriate group to operate this COC," because that department had "done nothing to advance [the COC] from its inception." Id. Instead, the UAW recommended that the COC be led by the operations department, which they believed would "take a more proactive approach" to managing

3

and expanding the COC. Id. Ivan Mitchell shared this letter with Luqmaan during a meeting about the COC. Id. at 139-140.

The UAW's letter prompted discussion of the COC at some NRV director-level staff meetings in January and February 2013. Sutphin Decl. ¶ 4; LaFon Dep. at 12-13. During this period, Blomberg placed Kirk Sutphin, NRV's Director of Quality, in charge of the COC. Id. Accordingly, Sutphin took on responsibility of COC in addition to his duties in the Quality Department. Id. Mitchell and Worrell, in turn, relinquished control of the COC and began to work solely in the Customer Engineering Department. Id. Blomberg then asked Sutphin to develop a proposal to reorganize and grow the COC within the Quality Department in response to the UAW's concerns. Id. at ¶ 5. Sutphin presented his proposal to the NRV's director-level staff during a staff meeting in February 2013. Id. The staff approved the proposal and its implementation. Id.

Sutphin's proposal "involved several moving pieces and personnel." Id. at ¶ 6. First, to eliminate the COC's manpower issues, Sutphin made the Operations Department responsible for actually executing the options work. Id. Sutphin therefore transferred Hetherington, the COC's Production Supervisor and Luqmaan's direct report, to a position on the main production line of the Operations Department. Id. In turn, Mike Aiken, an Operations Department employee, assumed a new role as Option Center Coordinator within the COC. Id. Unlike Hetherington, who had been focused on the actual execution of the options work, Aiken's job focused on developing instructions and procedures related to option installations. Id. Sutphin also created a new bargaining unit position, the Option Center Specialist, which was designed to address the UAW's concerns about its lack of representation within the COC. Id. at ¶ 7. Tony Royal, a bargaining unit employee, assumed this position. Id.

Sutphin also believed that "it made sense for the COC to start with a clean slate from a management standpoint." Id. at ¶ 8. Sutphin therefore eliminated Luqmaan's position of COC

4

Manager, and reallocated his duties between two new positions. Id. Specifically, Bill Padden, a 40-year Volvo employee who had been directly reporting to Sutphin in the Quality Department and had been set to retire, agreed to continue working for Volvo as the COC's Chief Business Leader. Id. Padden's role "focused on marketing [Volvo's] options business" and "managing the overall workload of the department." Id. Padden earns a grade 11 salary on Volvo's pay scale. Id. Bo Dalton, who had been working in Volvo's Logistics Department, began working as the COC's Business Leader. Id. In that role, Dalton's responsibilities include "quoting options for customers, writing purchase orders, and receiving materials for options work." Id. He earns a grade 8 salary on Volvo's pay scale. Id. Dalton reports to Padden, who in turn reports to Sutphin. Id.

Sutphin also moved Luqmaan to a new position. Sutphin stated that he "had a specific need for [Luqmaan] in the Quality Department," because Shirley Fink, another NRV employee, was leaving a position as Senior Quality Engineer at that time. Id. at ¶ 9. Sutphin "knew that Luqmaan could do this job well, as he had previously worked under [Sutphin] as a Senior Quality Engineer and held this position immediately prior to becoming COC Manager." Id. In this position, Luqmaan's responsibilities include "understanding and collecting data on how the product is getting built in their specific assigned area and addressing issues, including defects and warranty claims, from a quality standpoint." Id. As a Senior Quality Engineer, Luqmaan earns a grade 8 salary on Volvo's pay scale. Id. at ¶ 8.

Sutphin told Luqmaan about his reassignment during a meeting in Mitchell's office on February 28, 2013. Id. at ¶ 10; Luqmaan Dep. at 158-62. According to Sutphin, he explained "that [Luqmaan's] transfer was part of the overall reorganization to help address the issues within the COC." Sutphin Decl. ¶ 8. Luqmaan, however, contends that he "was not told why he was removed" from his position as COC Manager. Luqmaan Dep. at 24-25. After this meeting, Sutphin emailed other director-level staff about Luqmaan's "agitated" reaction to his reassignment. Sutphin Decl.at ¶

5

10, Ex. 6. In that email, Sutphin stated that he had explained to Luqmaan that his decision was based on Volvo's recommitment to the COC and the "need to refresh the organization." Pl.'s Br. in Opp. Ex. A. The following day, NRV announced the personnel changes associated with the COC reorganization, including Luqmaan's reassignment, via internal email. Sutphin Decl. ¶ 10, Ex. 7.

The parties dispute whether Luqmaan's reassignment constitutes a lateral transfer or a demotion. Volvo contends that "Luqmaan has only benefitted from his transfer." Def.'s Mot. Summ. J. at 10. Although Luqmaan's salary grade technically changed from a 9 to an 8 when he was reassigned, his base salary of $91,776 did not change. Luqmaan Dep. at 181. As a Senior Quality Engineer, Luqmaan is also eligible for overtime, which means he earns an average of $950 more per month now than before his reassignment. Id. at 181-182; Shiffner Decl. at ¶ 3, Def.'s Mot. Summ. J. Ex. 4, Docket No. 29-4. Luqmaan also received a raise in 2014, bringing his base salary to $94,529. Shiffner Decl. at ¶ 5. According to Jerry Shiffner, NRV's Director of Human Resources, the Business Leader position in the COC, which is "the closest equivalent position to Luqmaan's former COC Manager position," is also a grade 8 on Volvo's pay scale. Id. at ¶ 4. Indeed, the current COC Business Leader, Bo Dalton, currently earns a lower base salary than Luqmaan. Id. at ¶ 5. Volvo also contends that Luqmaan has retained the same position in its overall corporate hierarchy, as reflected by NRV's organizational charts. Luqmaan Dep. at 298-302, Ex. 2. Volvo maintains that Luqmaan's "opportunities for advancement within Volvo [therefore] remain the same as they were prior to his transfer." Shiffner Decl. ¶ 6. Furthermore, Volvo asserts that Luqmaan's job security may be greater in his new position, because the future of the COC continues to be "in flux" at NRV. Sutphin Decl. ¶ 11.

Luqmaan, on the other hand, characterizes his reassignment as a demotion. Initially, he notes that his current position is the same one he held prior to being selected as COC Manager. Sutphin Dep. at 46. Luqmaan "no longer [has] people reporting to [him], and [] no longer [has] the

6

responsibility of hiring, placing, or doing anything that came along with the role of being a [m]anager." Luqmaan Dep. at 164-65. Luqmaan found this demotion to be humiliating and embarrassing, particularly because he "was not told why we he was removed" and "there was nothing in [his] employee record" to suggest that he had been unsuccessful in managing and developing the COC. Id. According to Luqmaan, he "instantly" believed that his demotion was discriminatory in nature, because he "asked why [he] was being relieved [from his position] and that question was not answered." Id. at 177-78. Luqmaan also notes that "there [are] very few, if any, African-American managers in the plant." Id. at 25. Out of 410 management employees at NRV, twenty-seven are minorities and twelve are African-American. See Volvo Statistics, Pl.'s Br. in Opp. Ex. 9, Docket No. 35-9.

After exhausting his administrative remedies, Luqmaan filed the instant action on March 18, 2014, asserting a race discrimination claim under Title VII. Following the completion of discovery, Volvo moved for summary judgment. That motion has been fully briefed, and the parties have indicated that they wish to forego oral argument. The motion is thus ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of

7

evidence' in support of the [non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

Title VII prohibits practices that "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment because of such individual's …race…." 42 U.S.C. § 2000e-2(a)(1). It also makes it unlawful for an employer "to limit, segregate, or classify his employees…in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race." 42 U.S.C. § 2000e-2(a)(2). Luqmaan claims that Volvo violated Title VII by demoting him because of his race.

### A. Applicable Law

A Title VII plaintiff "may avert summary judgment…through two avenues of proof." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). First, "[a] plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). An impermissible factor need not be the sole reason motivating the employer's decision. Univ. of Tx. Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2522-23 (2013). "It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives." Id.

Alternatively, a plaintiff can use the well-established burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-07 (1973), which provides "a method for raising an inference of discrimination" in the absence of direct or circumstantial evidence. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Under this framework, the

8

plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. Id. at 318-19. Once he does so, the burden shifts to his employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. Id. Once the employer produces such a reason, "the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination." Heiko v. Colombo Sav. Bank, 434 F.3d 249, 258 (4th Cir. 2006). At this final stage, the presumption of discrimination created by the prima facie case falls away, and the plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him]." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In moving for summary judgment, Volvo asserts that, under the burden-shifting pretext framework, Luqmaan has failed to establish a prima facie case of race discrimination. Volvo also argues that, even if Luqmaan has successfully made out a prima facie case, he has not shown that its proffered reason for his reassignment was pretext for discrimination. In response, Luqmaan asserts that his claim should survive summary judgment for two reasons. First, he asserts that he has put forth sufficient circumstantial evidence to create a genuine issue of material fact regarding whether Volvo's decision was motivated, at least in part, by race. Alternatively, Luqmaan argues that, under the McDonnell Douglas framework, he has established a prima facie case of discrimination and has offered sufficient evidence of pretext to survive summary judgment. The court will discuss each argument in turn.

**B. Circumstantial Evidence of Discrimination**

As in other cases, Title VII plaintiffs "may utilize 'ordinary principles of proof'" to establish discrimination, including "'indirect evidence relevant to and sufficiently probative of the issue.'" Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999) (citing Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992)), abrogated on other grounds by Desert Palace, Inc. v.

9

Costa, 539 U.S. 90 (2003). To avoid summary judgment in this manner, "the plaintiff 'must produce ... evidence of sufficient probative force to reflect a genuine issue of material fact.'" Id. (quoting Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988)). "What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. Luqmaan offers no direct evidence of racial discrimination. He asserts, however, that he has put forth enough circumstantial evidence to create a jury question with respect to whether Volvo demoted him because of his race. The court is constrained to disagree.

Luqmaan first suggests that the UAW's January 2013 letter "indicates that Volvo Senior Staff continuously operated to thwart Mr. Luqmaan" while he worked as COC Manager. Luqmaan points out that, in that letter, the UAW praised his leadership and expressed concerns that "certain integral managers necessary to the success of the COC seem more dedicated to its failure than its success." Luqmaan Dep. Ex. 7 at 1. Luqmaan asserts that this is "circumstantial evidence that members of Volvo Senior Staff operated with a racial animus" toward him, but he does not explain exactly how this is so. Substantial record evidence indicates that Volvo's lack of support for the COC arose from institutional, not racial, concerns. See UAW Letter, Luqmaan Dep. Ex. 7 (stating that the Engineering Department was not the appropriate department to run the COC and suggesting that the Operations Department take control of that division instead); Luqmaan Dep. at 204 (stating that, before he accepted the position as COC Manager, he was aware that "as long as there has been an Option Center there, it's never been a...priority of the NRV plant."); id Ex. 9 (EEOC intake questionnaire, on which Luqmaan identified a Caucasian coworker as being treated worse than him based on Volvo's failure to properly support the COC). When considered in context, therefore, the UAW letter actually supports the idea that the reorganization had nothing to do with Luqmaan at all. Moreover, even if certain Volvo managers did harbor racial animus, Luqmaan points to no evidence

10
Case 7:14-cv-00115-GEC Document 37 Filed 03/26/15 Page 10 of 20 Pageid#: 881

suggesting that this animus influenced Sutphin's decision to reassign him. In fact, in his deposition, Luqmaan could not recall any situation in which he felt that Sutphin or any other director-level Volvo employee behaved with racial animus toward him. Id. at 286-89.

Luqmaan also points out that that only two percent of managerial employees at NRV are African-American. See Pl.'s Br. in Opp. Ex. I. It is true that, in some cases, "[s]tatistics with regard to the defendant's employment policy and practice may be helpful to a determination whether its action in a particular case conformed to a general pattern of discrimination." Warren v. Halstead Indus., Inc., 802 F.2d 746, 753 (4th Cir. 1986) (citing McDonnell Douglas, 411 U.S. at 805). "[S]tatistics cannot alone prove the existence of a pattern or practice of discrimination," however. Id.; see also Hawkins v. Leggett, 955 F.Supp.2d 474, 492 (D. Md. 2013) ("[A] mere statistical disparity is generally insufficient to prove disparate treatment."). Instead, the "usefulness [of statistical evidence] depends on the surrounding facts and circumstances." Blakes v. City of Hyattsville, 909 F.Supp.2d 431, 439 (D. Md. 2012). Here, Luqmaan's statistical evidence is "threadbare" at best, and he provides no context for that data. Id. Examining the number of minority management employees at Volvo, without more, would not permit a reasonable juror to infer "a general pattern of discrimination," much less that Luqmaan's particular reassignment formed part of that pattern. Warren, 802 F.2d at 753; see id. at 758-59 (reversing summary judgment in part because "statistical evidence presented by the plaintiffs' expert witness show[ed] that the number of blacks discharged from [the defendant]…was at a deviation rate higher than would be explained by chance, and, in fact, was in a range where an inference of discrimination is raised") (emphasis added).

Finally, Luqmaan emphasizes that Volvo has not permitted him to depose Lars Blomberg, who served as NRV's Vice President and General Manager during the COC reorganization and who now works for Volvo Bussar Aktiebolag (an entity separate from defendant Volvo) in Sweden.

11

Luqmaan suggests that, because Blomberg tasked Sutphin with reorganizing the COC, Blomberg may have influenced his decision to reassign Luqmaan in some way. Luqmaan first raised this issue in a motion to compel and for sanctions, which was fully briefed and argued. See Docket No. 17. After the hearing on this motion, the court ordered Volvo to produce all written communications between Sutphin and Blomberg "that related to the Option Center or to [Luqmaan]." See January 21, 2015, Docket No. 33. The order further stated that "[s]hould this additional discovery reveal evidence suggesting that Mr. Blomberg played a direct role in the plaintiff's reassignment, the plaintiff may reassert his motion to compel Mr. Blomberg's deposition testimony." Id.

Luqmaan does not point to newfound evidence suggesting that Blomberg played any role, much less a direct role, in his reassignment. The record continues to reflect that Blomberg tasked Sutphin with reorganizing the COC, and that Sutphin then made the specific personnel decisions that he believed were necessary. Blomberg's testimony would therefore appear to bear little, if any, relevance to this case. Further, the record indicates that Blomberg no longer works for Volvo. See Dalton Decl. ¶¶ 2-3, Def.'s Resp. to Pl.'s Mot. Compel, Docket No. 23-11. Volvo's failure to produce a nonparty witness who lives and works abroad, particularly one who is only tangentially related to the issues contested here, does not constitute a "highly suspicious set of circumstances" that is probative circumstantial evidence of racial discrimination. See Br. in Opp. at 16.

Ultimately, Luqmaan fails to advance any probative evidence of "conduct or statements" that reflect an "alleged discriminatory attitude" bearing directly on Luqmaan's demotion. Brinkley, 180 F.3d at 607. The court thus concludes that his claim fails to withstand Volvo's motion for summary judgment under this first avenue of proof.

C. **McDonnell Douglas** Framework

Absent circumstantial evidence of discrimination, Luqmaan could nonetheless survive summary judgment by satisfying the requirements of the burden-shifting pretext framework set forth

12

in McDonnell Douglas. The court finds, however, that Luqmaan has failed to do so here.

## I. *Prima Facie Case*

Under the McDonnell Douglas framework, Luqmaan must first establish a prima facie case of discriminatory demotion, which requires him to show that "(1) he is a member of a protected class; (2) he was qualified for his job and his performance was satisfactory; (3) despite his qualifications, he was removed from his position and reassigned to a lower-level position; and (4) his original position remained open or was filled by a similarly qualified applicant outside of the protected class." Harris v. Home Sales Co., 499 F. App'x 285, 292 (4th Cir. 2012) (internal citation and quotation marks omitted). In this case, the first two elements are uncontested: Luqmaan, an African-American man, belongs to a protected class. Volvo also agrees that Luqmaan was qualified for his position as COC Manager and was performing that job satisfactorily at the time of his reassignment. See Def.'s Mot. Summ. J. at 12. The court therefore addresses only the third and fourth elements of the prima facie case below.

### a. Reassignment to a Lower-Level Position

To establish a prima facie case of discriminatory demotion, a plaintiff must show that he was, in fact, demoted; that is, that he was reassigned to a lower-level position. Harris, 499 F. App'x at 292. "The mere fact that a new job assignment is less appealing to the employee" does not constitute a demotion that is actionable under Title VII. James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004) (internal quotation marks and citation omitted). Instead, a reassignment "can only form the basis of a valid Title VII claim if the plaintiff can show that [it] had some significant detrimental effect" on his employment. Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). Without some "decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not

13

present in the old position." Id. at 256-57.

Here, Luqmaan argues that his reassignment was a demotion, because his job title, responsibilities, and opportunity for advancement were limited by the move. Specifically, Luqmaan asserts that, as COC Manager, he had the authority to hire and supervise direct reports, manage company funds, enter into contracts on Volvo's behalf, and act as the COC's ultimate decision-maker. See Pl.'s Br. in Opp. at 7. He enjoys none of these responsibilities in his current position. Luqmaan also argues that the reassignment limited his opportunities for future advancement at Volvo, because he no longer serves in a managerial role and would have to apply for and compete with other Volvo employees to obtain a management position in the future. Id. at 8. Luqmaan further emphasizes that being reassigned to the same position that he held prior to being selected as COC Manager was embarrassing and humiliating for him.

Volvo, on the other hand, characterizes Luqmaan's reassignment as a lateral transfer. Volvo first points to the undisputed fact that, although Luqmaan's pay grade changed in the reassignment, his base salary did not. In fact, Luqmaan earns more in his new position, both because he is eligible for overtime pay and because he has received a raise since the reassignment. Volvo also asserts that, although Luqmaan was responsible for the COC's performance when he worked as COC Manager, he did not have "ultimate" authority of that division. Instead, Luqmaan was supervised by Worrell, who in turn was supervised by Mitchell. As a Senior Quality Engineer, Luqmaan continues to be supervised by two levels of Volvo management. Volvo thus argues that Luqmaan remains in the same position in its corporate hierarchy and enjoys the same opportunities for future advancement.

Considering the record as a whole in the light most favorable to Luqmaan, the court believes that a reasonable juror could view Luqmaan's reassignment as a demotion, particularly considering Luqmaan's testimony regarding the responsibility entrusted to him and the respect afforded to him in each position. The court will therefore assume for purposes of summary judgment that Luqmaan

14

has satisfied the third element of his prima facie case.

### b. Position Open or Filled by an Individual Outside the Protected Class

The court must next consider whether Luqmaan has demonstrated that, after his demotion, his former position either "remained open or was filled by similarly-qualified individuals outside of the protected class." Harris, 499 F. App'x at 292. It appears undisputed that the position of "COC Manager" no longer exists after the reorganization. See NRV 2013 Organizational Charts, Sutphin Decl. Ex. 4. Instead, Padden, the Chief Business Leader of the COC, and Dalton, the Business Leader of that division, perform many of Luqmaan's former job duties. Compare Supthin Decl. ¶ 8 (describing the responsibilities of Padden and Dalton) with Luqmaan Dep. at 98-99 (describing his responsibilities as COC Manager). The rest of Luqmaan's responsibilities have been redistributed to departments outside the COC entirely. See Sutphin Decl. ¶ 8. Volvo argues that Luqmaan cannot satisfy the final element of his prima facie case, because his position was eliminated during the reorganization. See Catalan v. House of Raeford, 17 F.Supp.3d 520, 527 (E.D.N.C. 2014) (granting summary judgment for employer on discriminatory demotion claim in part because employer presented uncontroverted evidence that plaintiff's position was eliminated "as part of an overall corporate restructuring process"); see also Mathews v. Denver Newspaper Agency LLP, 649 F.3d 1199, 1208 (10th Cir. 2011).

Luqmaan has failed to meaningfully respond to Volvo's argument. Nonetheless, he appears to suggest that his former position is now occupied by Sutphin. See Pl.'s Br. in Opp. at 3 ("Direct managerial control of the [COC] has since transferred to Mr. Sutphin, a Caucasian supervisor of Mr. Luqmaan. Mr. Sutphin currently works as Director of Quality at Volvo. Despite his difference in title from Mr. Luqmaan's former title, Mr. Sutphin manages the [COC] with the same level of authority then vested in Mr. Luqmaan as Manager of the [COC]."). In certain cases, a Title VII plaintiff can satisfy the fourth element of the prima facie case by showing that a similarly-qualified

15

individual outside his protected class holds a newly-created position that is the functional equivalent of his eliminated position. See, e.g., Burgess v. Bowen, 466 F. App'x 272, 279 (4th Cir. 2012) (plaintiff offered evidence suggesting that her eliminated position was "functionally equivalent" to a newly-created position filled by a similarly-qualified applicant outside the protected class, where the new position "involved the same managerial and oversight responsibilities"); Murray v. Gilmore, 406 F.3d 708, 714 (D.C. Cir. 2005) (plaintiff offered "plentiful evidence from which a jury could conclude that rather than functionally eliminating the [plaintiff's] position, [the defendant] simply gave the position a new title and tapped [someone else] to hold it"). Reading his submissions generously, the court will assume that Luqmaan intends to satisfy the fourth element in this manner.

This position fails for several reasons. First, Sutphin is not employed in a position created after Luqmaan's demotion. He has served as the NRV's Director of Quality – a "director-level" position – at all times before, during, and after the COC's reorganization. Sutphin Decl. ¶¶ 1, 3, 4-10, Ex. 1, 4. Moreover, Luqmaan cannot show that Sutphin's position is "functionally equivalent" to the eliminated COC Manager position. Burgess, 466 F. App'x at 279. When Blomberg tasked Sutphin with reorganizing the COC, Sutphin "assumed" duties previously performed by Ivan Mitchell, the Director of Customer Engineering, who ranked two levels above Luqmaan in Volvo's corporate hierarchy. Id. at ¶¶ 2-3. Luqmaan's former job responsibilities are now primarily performed by Padden and Dalton, individuals who report to Sutphin. The undisputed record thus reflects that Sutphin had significantly more authority at Volvo than Luqmaan, before and after the COC reorganization. Because Sutphin does not occupy a position that is "functionally equivalent" to the eliminated position, the court concludes that Luqmaan has failed to show that his position "was filled by a similarly qualified applicant outside of the protected class," as required for the last element of the prima facie case. Harris, 499 F. App'x at 292. Luqmaan's prima facie case thus fails.[1]

---

[1] The court notes that colorable argument could be made that the COC Business Leader position occupied by

16

## *II. Pretext*

Even if Luqmaan could establish a prima facie case of race discrimination, Volvo has offered a legitimate, non-discriminatory reason for his reassignment: namely, that Luqmaan was transferred as part of Sutphin's overall reorganization of the COC in response to the concerns presented in the UAW's letter. Because Volvo has clearly met its burden by proffering a permissible reason for the reassignment, Luqmaan is required to show that the asserted reason is "actually a pretext for discrimination." Hill, 354 F.3d at 284-85. While Luqmaan advances several arguments in an attempt to establish pretext, the court concludes that he has failed to carry his burden here.

Luqmaan first argues that his reassignment was an "illogical decision," given that the COC "was a well-run, high-earning division of Volvo under [his] management." Pl.'s Br. in Opp. at 12. Luqmaan emphasizes that the COC was profitable throughout his tenure. He also suggests that, although the COC has remained profitable, it was less profitable after the reorganization than before. See id. Ex. 2. Luqmaan also contends that Sutphin failed to provide him with adequate justification for his reassignment, instead stating only that he "felt that it would be good to have a fresh start and a clean slate" generally. Sutphin Dep. at 66. Luqmaan asserts that he immediately saw Sutphin's decision as discriminatory, because he was not "given an opportunity to be told why [he] was being relieved." Luqmaan Dep. at 178.

Even assuming that Volvo's decision was "illogical," that alone is insufficient to show pretext. A federal court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v.

---

Dalton is "functionally equivalent" to Luqmaan's former position: both are a grade 8 on Volvo's pay scale, involve some of the same duties, and report to two levels of superiors at NRV. Dalton is also a Caucasian man outside the protected class. See Sutphin Decl. ¶ 8. Luqmaan fails to make or even hint at this argument in his brief, however. Moreover, significant record evidence would contradict this position. For example, Dalton performs only a fraction of Luqmaan's former duties, while many have been delegated to Padden or others. Id. This case is thus distinguishable from Burgess and Murray, where the new position at issue encompassed nearly all of the same tasks and responsibilities as the plaintiffs' eliminated positions. Ultimately, the court need not explore this issue further here. Even if Luqmaan had raised this issue and convinced the court of his prima facie case, his claim would nonetheless fail because he has not

17

Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal citation and quotation marks omitted). Instead, the court's "sole concern" is whether the reason for the adverse employment action was "discriminatory." Id. That the COC was profitable under Luqmaan's direction does not suggest that Volvo's decision to reassign him was discriminatory, particularly given that Volvo has produced evidence showing that the reorganization was designed to respond to concerns other than profitability alone. See Sutphin Dep. at 42-43 (stating that his primary consideration in reorganizing the COC was production of a turn-key truck); Sutphin Decl. ¶ 7 (stating that he added a bargaining-unit position to the COC during the reorganization to address the UAW's concerns regarding its lack of representation in that division).

Furthermore, Luqmaan's subjective opinion regarding the validity or sufficiency of Sutphin's justification for his transfer is irrelevant to the pretext analysis. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (stating that, when considering pretext, it is "the perception of the decision maker that is relevant, not the self-assessment of the plaintiff."); Williams v. Cerberonics, Inc., 871 F.3d 452, 456 (4th Cir. 1985) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate, nondiscriminatory reasons for an adverse employment action."). Luqmaan has not provided evidence suggesting that Sutphin did not honestly believe the reason that he provided for Luqmaan's reassignment, no matter how unsatisfactory that reason may have been to Luqmaan himself. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (stating that "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [reassignment].").

Moreover, "[i]n demonstrating that the…decision was pretext, [the plaintiff must] prove 'both that the reason was false, and that discrimination was the real reason." Adams v. Trs. Of the

---

shown sufficient evidence of pretext, as discussed below.

Univ. of N. Carolina-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (internal citation and quotation marks omitted) (emphasis in original). In other words, "[i]t is not enough to disbelieve" an assertion made by the defendant; "the fact-finder must believe [the plaintiff's] explanation of intentional discrimination." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Luqmaan correctly notes that, in some cases, the jury's "rejection of the defendant's proffered reasons will permit [it] to infer the ultimate fact of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 510 U.S. 133, 134 (2000). The jury can only do so, however, when some evidence indicates that the defendant's proffered explanation is "unworthy of credence." Id. Luqmaan has failed to produce any evidence here such as to warrant consideration of this issue by a jury.

Luqmaan also asserts that he was treated differently than those outside the protected class, because he was the only manager affected by the reorganization and was replaced by Caucasian employees. Although comparator evidence can be "especially relevant" to a showing of pretext, McDonnell Douglas, 411 U.S. at 804, the persons being compared must be "similarly situated...in all relevant respects." Odom v. Int'l Paper Co., 652 F.Supp.2d 671, 692 (E.D. Va. 2009). Luqmaan fails to point to any specific similarly-situated comparator who was treated more favorably during the reorganization. Luqmaan asserts that Sutphin took over his position during the reorganization, but Sutphin is certainly not a similarly-situated comparator, for the reasons discussed above. Furthermore, the record shows that Mitchell and Worrell, Caucasian Volvo supervisors who might arguably be seen as comparators in this case, lost their responsibilities relating to the COC during the reorganization as well.[2]

In sum, Luqmaan has not produced evidence beyond his own speculation that tends to show that Volvo's real motivation for reassigning him was discriminatory. Without probative evidence of pretext, Luqmaan's claim cannot survive summary judgment under McDonnell Douglas.

## Conclusion

For the reasons stated, the court will grant Volvo's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 26th day of March, 2015.

/s/ Jim Conrad
Chief United States District Judge

---

[2] Luqmaan also points to the circumstantial evidence outlined in Part B, supra, in support of his pretext argument. For the reasons discussed in that section, the court believes that this evidence is also not probative of pretext.